## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**LANCE H. FARMER,**        :
       **Plaintiff**        :       **No. 1:16-cv-00653**
       :
       **v.**        :       **(Judge Kane)**
       :
**MATTHEW T. DECKER,**        :
       **Defendant**        :
       :

## <u>MEMORANDUM</u>

Before the Court is Defendant Matthew T. Decker ("Defendant")'s motion for summary judgment. (Doc. No. 28.) For the reasons that follow, the Court will grant the motion.

## I. BACKGROUND

### A. Procedural Background

This action finds its origins in the April 4, 2015 Easter egg hunt at the Wesley United Methodist Church in Marysville, Pennsylvania. A report of Plaintiff Lance H. Farmer ("Plaintiff")'s verbal confrontation with a woman at that event was made to the Pennsylvania State Police. Defendant Decker, a Pennsylvania State Trooper, investigated the complaint and cited Plaintiff for disorderly conduct. On April 19, 2016, Plaintiff filed a complaint against Trooper Decker alleging First Amendment "Retaliation for Protected Speech" pursuant to 42 U.S.C. § 1983 (Count 1), and claims for Malicious Prosecution and Abuse of Process under Pennsylvania law (Counts 2 and 3). (Doc. No. 1.) On August 15, 2016, Defendant filed a Motion to Dismiss Counts 2 and 3 of Plaintiff's complaint, arguing that the state law claims should be dismissed by operation of the doctrine of sovereign immunity of the Commonwealth and its employees. (Doc. Nos. 8, 11.) On March 9, 2017, the Court issued an Order denying Defendant's motion to dismiss, noting that Defendant did not fully address the relevant legal

issues in his brief in support of his motion, and finding that while it was a "close call," the Court could not conclude that Plaintiff "failed to allege facts from which it can reasonably be inferred that Defendant's actions were motivated solely by personal concerns," that would potentially remove him from the scope of sovereign immunity's protection. (Doc. No. 15 at 3-4.) The Court's Order denied the motion without prejudice to Defendant's ability to renew this issue in connection with a properly-supported motion for summary judgment. (Id. at 4.)

After the close of discovery, on October 17, 2017, Defendant filed a motion for summary judgment as to all three counts of Plaintiff's complaint (Doc. No. 28), with a statement of material facts (Doc. No. 29), and supporting brief (Doc. No. 30). After receiving an extension of time to respond to Defendant's motion, Plaintiff filed his brief in opposition to Defendant's motion on November 17, 2017 (Doc. No. 34), as well as an "Answer to Defendant's Statement of Facts and Plaintiff's Statement of Additional Facts" (Doc. No. 33). After the Court granted an additional extension of time, Defendant filed his reply brief on December 15, 2017 (Doc. No. 38), as well as a response to Plaintiff's additional facts (Doc. No. 37). Accordingly, the motion has been fully briefed and is ripe for disposition.

### B. Plaintiff's Evidentiary Challenges

Before setting forth the material facts as presented by Defendant in connection with his motion, the Court addresses two challenges made by Plaintiff to the evidence proffered by Defendant in support of his motion for summary judgment. First, Plaintiff challenges Defendant's Declaration (Doc. No. 29-2), in support of his motion as a self-serving declaration that is insufficient to support a motion for summary judgment, citing State Farm Mut. Ins. Co. v. Philly Family Practice, Inc., 525 F. Supp. 2d 718, 726 (E.D. Pa. 2007). In response, Defendant notes that declarations in support of motions for summary judgment are expressly permitted by

Federal Rule of Civil Procedure 56(c)(4), and that Defendant's Declaration simply recounts his investigation of the incident that forms the basis of this action and is fully consistent with his deposition testimony. (Doc. No. 38 at 7 n.2.) In addition, Defendant points out that the case cited by Plaintiff is clearly distinguishable from the instant case, as the declaration at issue in State Farm sought to advance a self-serving interpretation of a potentially ambiguous contract provision, rather than recount events within the declarant's personal knowledge. (Id.) The Court agrees with Defendant that Plaintiff's challenge to Defendant's Declaration is unavailing.

Second, in responding to the statements offered by Defendant by way of his Declaration, Plaintiff raises a hearsay objection to such evidence, arguing that the statements set forth in Defendant's Declaration, recounting information reported to him by the individual involved in the incident with Plaintiff, as well as witnesses to it, are offered for the truth of the matter asserted and therefore, should be disregarded by the Court as inadmissible hearsay under Federal Rule of Evidence 801. (Doc. No. 34 at 2-3.) In response, Defendant notes that the claims asserted against him depend on the circumstances surrounding the actions he took in response to the incident and the information reported to him, and as a result, the relevant legal inquiry focuses on what information Defendant possessed at the time he issued the Citation/Summons for Disorderly Conduct ("Citation/Summons"). (Doc. No. 38 at 9.) Accordingly, Defendant maintains that the statements challenged by Plaintiff as inadmissible hearsay are not offered for the truth of the matter asserted, but rather, are offered to demonstrate the universe of information upon which Defendant based his issuance of the Citation/Summons to Plaintiff. (Id. at 9-10.) In addition, Defendant maintains that, assuming arguendo that the relevant statements constitute inadmissible hearsay, they fall within Federal Rule of Evidence 803(1)'s present sense impression exception to the hearsay rule and are potentially admissible on that basis. (Id.)

The Court finds Plaintiff's hearsay objection to the statements at issue (which, as noted above, consist of Defendant's description of information provided to him by the individual involved in the incident with Plaintiff, as well as witnesses to it), to be unavailing. As Defendant correctly notes, even assuming that the statements constitute hearsay, they can be properly considered on a motion for summary judgment if such evidence is capable of admission at trial. See Fed. R. Civ. P. 56(c)(2). Therefore, the party proffering such evidence "must demonstrate that it could satisfy the applicable admissibility requirements at trial before the evidence may be used on summary judgment." Bender v. Norfolk Southern Corp., 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014). The Court is persuaded that Defendant has demonstrated that the statements at issue could be admissible at trial for two potential reasons. One, the Court is persuaded that the statements are not offered for the truth of the matters asserted, but rather, to shed light on the basis for Defendant's issuance of a Citation/Summons to Plaintiff. Second, as the Declaration reveals that Defendant's conversation with the individual involved in the incident with Plaintiff took place shortly after the incident occurred, even assuming that information provided by her constitutes hearsay, such evidence potentially falls within Federal Rule of Evidence 803(1)'s present sense impression exception to the hearsay rule. Accordingly, the Court turns to a recitation of the relevant material facts.

### C.  Factual Background[1]

---

[1] The following relevant facts of record, taken from Defendant's statement of material facts (Doc. No. 29), are undisputed unless otherwise noted. Defendant's statement of facts contains specific citations to the record in numbered paragraphs. As noted above, in connection with his response to Defendant's statement of material facts, Plaintiff filed a "Statement of Additional

While on duty on April 4, 2015, Defendant received a call from police dispatch informing him that a complaint had been lodged by a Chief Aaron Richards on behalf of Mrs. Richards. (Doc. No. 29 ¶ 2.) Subsequently, while on duty, Defendant called Mrs. Richards and spoke with her regarding the complaint. (Id. ¶ 3.) During the interview, Mrs. Richards reported to Defendant that she had attended a church Easter egg hunt that day, also attended by approximately 50 other people. (Id. ¶¶ 4, 6.) Defendant was not present at the Easter egg hunt. (Id. ¶ 5.) Mrs. Richards told Defendant that Plaintiff approached her while at the event, which she attended with her children. (Id. ¶¶ 7, 8.)[2] Mrs. Richards told Defendant that Plaintiff spoke to her in a loud voice and called her children liars and "little assholes." (Id. ¶¶ 9, 10.) Mrs. Richards reported to Defendant that others attending the Easter egg hunt witnessed the interchange, and provided him with contact information for three to five individuals who she believed had been witnesses. (Id. ¶¶ 11-12.) Defendant contacted these individuals, who

---

Facts." (Doc. No. 33.) Defendant filed a response to that document wherein he argues that Plaintiff's "Statement of Additional Facts" was improperly filed and should be stricken and/or disregarded by the Court. (Doc. No. 37.) The Court agrees with Defendant that Plaintiff's "Statement of Additional Facts" fails to comport with Local Rule 56.1 of this Court, which contemplates only that a party opposing a motion for summary judgment file a statement of facts "responding to the numbered paragraphs set forth" in the moving party's statement of facts. L.R. 56.1. Therefore, the Court will disregard Plaintiff's statement in connection with its consideration of Defendant's motion, and consider only Plaintiff's numbered responses to Defendant's statement of material facts, in accordance with Local Rule 56.1. See Sash v. Hogsten, No. 07-0475, 2009 WL 249649, at *2 (M.D. Pa. Feb. 2, 2009) (providing that L.R. 56.1 "does not provide for a non-moving party to file his own statement of material facts but instructs the nonmoving party how to properly respond to the movant's statement of material facts"); Dreibelbis v. Young, No. 06-2055, 2007 WL 4344120, at *2 (M.D. Pa. Dec. 10, 2007) ("[B]ased on the plain language of Local Rule 56.1, Plaintiff's filing of his own Motion and Statement of Material Facts is not technically sufficient to either oppose Defendants' Motion or deny Defendants' Statement of Material Facts.").

[2] Plaintiff disputes Defendant's characterization that he "approached" Mrs. Richards, clarifying that while she walked by his table, he stepped into her path. (Doc. No. 33 ¶ 7.) He further maintains that Mrs. Richards' children were 20 feet away from her at the time of his interaction with her and that they did not hear his conversation with Mrs. Richards. (Id. ¶ 8.)

confirmed to him that a confrontation occurred between Plaintiff and Mrs. Richards and also generally confirmed Mrs. Richards' description of the events. (Id. ¶¶ 13-16.)[3]

Defendant attempted to contact Plaintiff, whom he had never met, to discuss the incident, but was ultimately unable to make contact with him to hear his version of the events at the Easter egg hunt. (Id. ¶¶ 1, 17.) Plaintiff was not present for Defendant's interviews with Mrs. Richards or any witnesses. (Id. ¶ 18.) After consultation with his supervisor, Defendant drafted a Citation/Summons for disorderly conduct to be issued to Plaintiff, and submitted it for the approval of his supervisor. (Id. ¶¶ 19-20.) The Citation/Summons was approved and forwarded to a magisterial district judge for processing. (Id. ¶ 21.)[4] After processing by the magisterial district judge,[5] the Citation/Summons for disorderly conduct was mailed to Plaintiff. (Id. ¶ 22.) The Citation/Summons notes that Plaintiff's conduct occurred at a church Easter egg hunt and that "Plaintiff's tone was loud and alarmed the children's parents." (Id. ¶ 23.) Defendant maintains that he did not provide Plaintiff's name to any news outlet regarding the Citation/Summons. (Id. ¶ 24.)[6] Ultimately, after a hearing on June 16, 2015, Plaintiff was found not guilty of disorderly conduct. (Doc. No. 33 ¶ 25.) At the hearing, the magisterial district judge stated that Plaintiff's conduct at the Easter egg hunt was "totally inappropriate and

---

[3] In response, Plaintiff notes that Defendant cannot recall any of the names of the witnesses, and further, that he neither retained written notes of his conversations with them nor obtained written statements from them, or drafted any report related to those conversations. (Doc. No. 33 ¶¶ 13-16.)

[4] Plaintiff notes that while the Citation/Summons contains the initials of a supervisor, he argues that "it is unknown whether the initials indicate 'approval.'" (Doc. No. 33 ¶ 20.)

[5] Plaintiff disputes Defendant's characterization that the Citation/Summons was "approved" by the magisterial district judge, arguing that the Citation/Summons contains no such approval. (Doc. No. 33 ¶ 21.)

[6] Plaintiff disputes this fact, pointing to Defendant's deposition testimony that as a matter of course, he prepared a news release regarding the incident but was unsure if it was published to anyone. (Doc. No. 37-1 at 68: 2-9.)

reprehensible given that it was in a church setting and it was at a children's Easter egg hunt, the language – that's not the time and place to confront someone and be calling their children assholes and with children present . . . But it's totally unwarranted and the church could have rightly said leave." (Doc. No. 29 ¶ 26.)

## II.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III. DISCUSSION

Defendant argues that he is entitled to summary judgment on the claims asserted against him because: (1) there exists no genuine issue of material fact as to his entitlement to sovereign immunity on Plaintiff's claims for malicious prosecution and abuse of process; and (2) Plaintiff fails to point to evidence from which a reasonable factfinder could conclude that he engaged in First Amendment retaliation. (Doc. No. 30 at 12-19.) Further, he maintains that even assuming that there exists a genuine issue of material fact as to Plaintiff's First Amendment retaliation claim, he is entitled to qualified immunity. (Id. at 19-22.) The Court addresses the claims in turn.

## A.  Plaintiff's State Law Tort Claims

Defendant argues that he is entitled to summary judgment on Plaintiff's state law tort claims for malicious prosecution and abuse of process because these claims are barred by the doctrine of sovereign immunity.  The doctrine of sovereign immunity of the Commonwealth and its employees is established by 1 Pa. C.S. § 2310.  The statute provides:

> Pursuant to [S]ection 11 of Article I of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

1 Pa. C.S. § 2310.[7]  Accordingly, under Pennsylvania's sovereign immunity statute, "an employee of the Commonwealth . . . acting within the scope of his or her employment or duties, is protected by sovereign immunity from the imposition of liability for intentional tort claims." Holt v. Nw. Pa. Training P'ship Consortium, Inc., 694 A.2d 1134, 1139 (Pa. Commw. Ct. 1997) (citing La Frankie v. Miklich, 618 A.2d 1145 (Pa. Commw. Ct. 1992)).  Here, as Plaintiff points to no evidence in support of a statutory exception applicable to his claims, Defendant is entitled to sovereign immunity if he acted within the scope of his duties in connection with the issuance of the Citation/Summons to Plaintiff.  With regard to whether an action is within the scope of employment under Pennsylvania law,

> an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by the employer.

---

[7]  The statutory exceptions, or waivers, to sovereign immunity are set forth at 42 Pa.C.S. § 8522, and include claims for damages caused by: (1) vehicles in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) the care, custody, or control of personal property; (4) a dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous conditions of highways created by potholes or sinkholes; (6) the care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.  See 42 Pa. C.S. § 8522.

Savage v. Judge, No. 05-2551, 2007 WL 29283, at *5 (E.D. Pa. Jan. 2, 2006) (citing Restatement (Second) of Agency § 228); see also Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000) (noting that the Supreme Court of Pennsylvania has adopted the Restatement's definition of "scope of employment").

Defendant maintains that the undisputed material facts demonstrate that he was acting within the scope of his employment as a Pennsylvania State Trooper when he issued the Citation/Summons giving rise to Plaintiff's claims, and therefore, sovereign immunity bars Plaintiff's state law claims for malicious prosecution and abuse of process. (Doc. No. 30 at 12-13.) Specifically, Defendant notes that he received a call from the Pennsylvania State Police dispatch while he was on duty, and proceeded to investigate the incident at the Easter egg hunt while on duty. (Id. at 13.) Further, Defendant states that he drafted the Citation/Summons and submitted it to his supervisors for approval while he was on duty. (Id.) Finally, Defendant avers that he had never met and, therefore, had no personal relationship with Plaintiff before the date of the Easter egg hunt, so his actions could not have been motivated by any personal animus between him and Plaintiff. (Id.) In sum, Defendant maintains that Plaintiff cannot point to evidence from which a reasonable factfinder could conclude that he was acting outside the scope of his employment as a Pennsylvania State Police Trooper when he issued the Citation/Summons to Plaintiff.

Plaintiff responds by arguing that sovereign immunity does not bar his state tort law claims because Defendant's personal reaction to his comments at the Easter egg hunt motivated him to issue the Citation/Summons to Plaintiff. (Doc. No. 34 at 11.) In support of this argument, Plaintiff maintains that "Defendant, a Christian by faith who is a member of a church, was clearly offended," by Plaintiff's comments, pointing to Defendant's deposition testimony

wherein he states that he is a Christian who is a member of a church.  (Doc. No. 33-1 at 31: 23-32: 2.)

Upon review of the briefs of the parties and the evidence of record, and construing all facts in the light most favorable to Plaintiff, the non-moving party, the Court concludes that Plaintiff has failed to point to evidence from which a reasonable factfinder could conclude that Defendant was acting outside the scope of his employment when he issued the Citation/Summons to Plaintiff.  The undisputed facts demonstrate that Defendant's investigation of the incident and issuance of the Citation/Summons is the type of action that Defendant is employed to perform as a Pennsylvania State Trooper, and that his investigation, which was prompted by a call from the Pennsylvania State Police dispatch, occurred "substantially within the job's authorized time and space limits."  See Savage, 2007 WL 29283, at *5.  Further, as to the issue of Defendant's motivation to issue the Citation/Summons, the Court is persuaded that the undisputed facts relating to the circumstances of Defendant's investigation, coupled with the lack of a prior relationship between Plaintiff and Defendant, demonstrate that Defendant's actions were motivated at least in part by a desire to serve his employer.

Plaintiff points to no record evidence to support his theory that Defendant cited him because as a member of the Christian faith Defendant was personally offended by Plaintiff's words and actions.  Even were Plaintiff able to make such a showing, because the law of sovereign immunity in Pennsylvania requires only that the employee's conduct be "motivated at least in part by a desire to serve the employer," Defendant is protected by sovereign immunity. See id. (emphasis added).  In light of the undisputed facts recited above, Plaintiff has failed to point to evidence of record from which a reasonable factfinder could conclude that Defendant's actions were solely motivated by personal animus, and, therefore, outside the scope of his

employment.  Accordingly, Plaintiff's state law tort claims for malicious prosecution and abuse

of process are barred by the doctrine of sovereign immunity, and consequently, Defendant is

entitled to summary judgment as to those claims.

### B.  Plaintiff's Claim for First Amendment Retaliation under 42 U.S.C. § 1983

Defendant maintains that he is also entitled to summary judgment on Plaintiff's Section

1983 claim for First Amendment retaliation, the essence of which is that Defendant violated

Plaintiff's First Amendment rights when he issued the Citation/Summons for disorderly conduct

to Plaintiff  based on his verbal confrontation with Mrs. Richards.  In maintaining that he is

entitled to summary judgment on Plaintiff First Amendment retaliation claim, Defendant argues

that: (1) Plaintiff's verbal confrontation with Mrs. Richards did not constitute constitutionally-

protected speech; (2) there exists no genuine issue of material fact as to Plaintiff's inability to

prove the absence of probable cause to charge Plaintiff under Pennsylvania's disorderly conduct

statute;[8] and (3) in any event, Defendant is entitled to qualified immunity as to Plaintiff's First

Amendment retaliation claim.  The Court first reviews the relevant legal standard applicable to

Plaintiff's First Amendment claim.

### 1.  Legal Standard Applicable to First Amendment Retaliation Claim

---

[8]  42 Pa.C.S.A. § 5503 provides, in relevant part:
    Disorderly conduct
    (a)  Offense defined.  – A person is guilty of disorderly conduct if, with intent to cause
        public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
        (1)  Engages in fighting or threatening, or in violent or tumultuous behavior;
        (2)  Makes unreasonable noise;
        (3)  Uses obscene language, or makes an obscene gesture;  or
        (4)  Creates a hazardous or physically offensive condition by any act which serves no
            legitimate purpose of the actor.

Section 1983 is the vehicle by which private citizens seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)).  To maintain a cause of action under Section 1983, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

A claim for First Amendment retaliation requires proof of: "(1) constitutionally protected conduct, (2) a retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006).  Defendant maintains that Plaintiff's claim is brought under a theory of retaliatory prosecution, and therefore, Hartman v. Moore, 547 U.S. 250 (2006), also requires proof that his pursuit of a Citation/Summons against Plaintiff was unsupported by probable cause.  (Doc. No. 30 at 14.) Plaintiff does not challenge Defendant's characterization of the legal requirements as to his First

Amendment claim, arguing only that no probable cause existed as to any disorderly conduct

offense. (Doc. No. 34 at 5-6.)[9]

## 2. Defendant's Arguments in Support of Summary Judgment

As noted above, Defendant first argues that no reasonable factfinder could conclude that

Plaintiff's conduct in verbally confronting Mrs. Richards at the church and calling her children

---

[9] As Defendant notes, in <u>Hartman</u>, the Supreme Court held that the absence of probable cause "must be pleaded and proven" by a successful plaintiff in connection with "a claim that prosecution was induced by an official bent on retaliation." <u>Hartman</u>, 547 U.S. at 265-66. More recently, in <u>Reichle v. Howards</u>, 566 U.S. 658 (2012), the Supreme Court explicitly declined to extend <u>Hartman</u>'s requirement of proof of probable cause to claims for retaliatory arrest, as opposed to retaliatory prosecution. <u>See id.</u> Yet more recently, in <u>Lozman v. City of Riviera Beach, Florida</u>, 138 S. Ct. 1945 (2018), the Supreme Court was squarely presented with the question of whether a plaintiff was required to plead and prove the lack of probable cause in connection with a claim for retaliatory arrest under the First Amendment, or, stated differently, whether the presence of probable cause bars a First Amendment retaliation claim. In that case, the Supreme Court declined to establish a bright-line rule, instead concluding that under the particular circumstances of the case, the existence of probable cause did not bar a First Amendment retaliation claim. <u>Id.</u> at 1954. Ultimately, the Supreme Court found that whether <u>Hartman</u>'s requirement applies to a First Amendment retaliatory arrest claim "must await a different case." <u>Id.</u> Shortly after issuing its decision in <u>Lozman</u>, the Supreme Court granted a petition for writ of certiorari in <u>Bartlett v. Nieves</u>, 712 F. App'x 613 (9th Cir. 2017), as to the following question: "In <u>Hartman v. Moore</u>, 547 U.S. 250 (2006), this Court held that probable cause defeats a First Amendment retaliatory prosecution claim under 42 U.S.C. § 1983 as a matter of law. Does probable cause likewise defeat a First Amendment retaliatory arrest claim under § 1983?" <u>Bartlett v. Nieves</u>, 712 F. App'x 613 (9th Cir. 2017), <u>cert. granted</u>, No. 17-1174 (U.S. June 28, 2018). Reviewing Third Circuit precedent against the backdrop of these Supreme Court cases, it remains unclear whether <u>Hartman</u>'s probable cause rule pertaining to retaliatory prosecution applies to retaliatory arrests within this Circuit. <u>See Primrose v. Mellott</u>, 541 F. App'x 177, 180 (3d Cir. 2013) ("We have not decided whether the logic of <u>Hartman</u> applies to retaliatory arrest claims . . . ."). Further, the Court notes that that it is not necessarily evident that <u>Hartman</u>'s rule applies to the situation presented by Plaintiff's complaint – i.e., a police officer's issuance of a Citation/Summons. However, the Third Circuit, in a non-precedential opinion, applied <u>Hartman</u>'s rule to a First Amendment retaliation claim based on the issuance of a citation by a police officer. <u>See Favata v. Seidel</u>, 511 F. App'x 155 (3d Cir. 2013). A district court in this Circuit reasoned similarly as well. <u>See Albert v. Weaver</u>, No. 05-2380, 2007 WL 2343830 at *6-7 (M.D. Pa. Aug. 15, 2007). Although neither of those cases constitutes binding precedent, and while noting the evolving state of the law on the applicable scope of <u>Hartman</u>'s probable cause requirement to First Amendment retaliation claims, in light of the fact that Plaintiff does not challenge his legal requirement to prove a lack of probable cause pursuant to <u>Hartman</u>, arguing only that no probable cause existed as to any disorderly conduct offense, the Court assumes for purposes of its analysis that <u>Hartman</u>'s requirement applies in this case.

liars and "little assholes" was constitutionally protected speech. (Doc. No. 30 at 14.) Plaintiff disagrees, arguing that the evidence of record supports a reasonable factfinder's conclusion that Plaintiff's speech was protected by the First Amendment. (Doc. No. 34 at 3-4.) The gist of the disagreement between the parties is whether Defendant's issuance of a Citation/Summons to Plaintiff for violating Section 5503(a)(3) of Pennsylvania's disorderly conduct statute, charging him with disorderly conduct based on the use of "obscene language," was prompted by Defendant's disapproval of the contents of Plaintiff's speech or, rather, was based on probable cause to believe that Plaintiff's conduct violated 18 Pa.C.S.A. § 5503(a)(3). Viewing all evidence in the light most favorable to Plaintiff, the non-moving party, the Court finds that, pursuant to the relevant authorities, a reasonable factfinder could conclude that Plaintiff's speech, which consisted of him undisputedly confronting Mrs. Richards loudly regarding her children and calling them liars and "assholes," was subject to First Amendment protection. See Eichenlaub v. Twp. of Ind., 385 F.3d 274, 282-83 (3d Cir. 2004) ("[E]xcept for certain narrow categories deemed unworthy of full First Amendment protection – such as obscenity, 'fighting words' and libel – all speech is protected by the First Amendment."); Clifton v. Borough of Eddystone, 824 F. Supp. 2d 617, 623-24 (E.D. Pa. 2011) (concluding that the terms "you asshole," and "mother f—ing cop," although vulgar and coarse, were not obscene because they did not appeal to prurient interests); McCoy v. Edwards, No. 06-cv-1142, 2009 WL 1794749, at *5-6 (M.D. Pa. June 23, 2009) (reasoning that the phrase "stupid asshole" was not obscene); Tate v. W. Norriton Twp., 545 F. Supp. 2d 480, 487 (E.D. Pa. 2008) (holding that "she needs f—ing help!" and "what, the f—k word?" were "emphatic, coarse, and disrespectful," but not obscene).

Assuming that Plaintiff's conduct was subject to constitutional protection, the Court also finds that, as to the second and third elements of a First Amendment retaliation claim, the record

contains sufficient evidence from which a reasonable factfinder could conclude that Defendant took retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights in response to Plaintiff's verbal confrontation with Mrs. Richards. The record reflects that because of Plaintiff's verbal confrontation with Mrs. Richards, Defendant issued him a Citation/Summons for disorderly conduct. Pursuant to Third Circuit precedent, the effect of retaliatory action "need not be great in order to be actionable, but it must be more than de minimis." McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks omitted). Here, the evidence of record exceeds "this low threshold." See Clifton, 824 F. Supp. 2d at 628; see also Primrose v. Mellott, No. 1:11-00835, 2012 WL 2321384, at *7 (M.D. Pa. June 19, 2012) (finding that defendant police officer's detention of plaintiff in her apartment and issuance of a summons for disorderly conduct following plaintiff's verbal confrontation with a neighbor sufficed to meet the second element of a First Amendment retaliation claim).

Moreover, as to the third element requiring proof of a causal link between constitutionally protected conduct and the alleged retaliatory action, a plaintiff must proffer sufficient evidence to support a reasonable factfinder's conclusion that his protected speech was a "substantial or motivating factor" in the alleged retaliatory action. See Primrose, 541 F. App'x at 180. Again viewing the evidence of record in the light most favorable to Plaintiff, the non-moving party, the Court finds that a reasonable factfinder could conclude that Defendant issued the Citation/Summons in response to Plaintiff's constitutionally protected speech. While Defendant has testified that he "wasn't necessarily focused on the words that were uttered . . . I was focused on his actions as a whole at the church" (Doc. No. 37-1 at 28: 22-24), and he further maintains that he issued the Citation/Summons to Plaintiff because he believed that he had probable cause to do so under Pennsylvania's disorderly conduct statute, there exists a genuine

issue of material fact as to the causation element of Plaintiff's retaliation claim.  Plaintiff points

to Defendant's deposition testimony wherein he admits that he believed that this incident was the

only time he ever issued a Citation/Summons for a violation of 18 Pa. C.S.A. § 5503(a)(3),

charging someone with disorderly conduct based on the use of "obscene language" (Doc. No. 33-

1 at 27: 25-28: 21), as a basis for his argument that Defendant issued the Citation/Summons

because of his objection to the contents of Plaintiff's speech.  Defendant testified that he had

previously issued a Citation/Summons for instances of disorderly conduct, including instances

involving the use of offensive language, for alleged violation of § 5503(a)(4), relating to creating

"a hazardous or physically offensive condition," not the alleged violation of § 5503(a)(3).  (Id. at

28: 23-29: 7.)  See Primrose, 2012 WL 2321384, at *7 (concluding that a genuine issue of

material fact existed as to the causation element of plaintiff's First Amendment claim where

defendant detained plaintiff in her apartment and issued a summons for disorderly conduct for an

alleged violation of § 5503(a)(3) in connection with plaintiff's loudly calling a neighbor either a

"noisy bitch" or "nosy bitch").  Accordingly, the Court finds that a genuine issue of fact exists as

to the potential causal link between Defendant's issuance of the Citation/Summons and

Plaintiff's potentially constitutionally protected speech.

However, as noted above, pursuant to Hartman, Plaintiff must also prove an absence of

probable cause as an element of his First Amendment retaliation claim, and Defendant maintains

that, based on the undisputed facts of record, no reasonable factfinder could conclude that he

lacked probable cause to issue a Citation/Summons to Plaintiff under Pennsylvania's disorderly

conduct statute based on his conduct at the Easter egg hunt.  (Doc. No. 30 at 15.)  In response,

Plaintiff argues that the undisputed facts of record demonstrate that Defendant lacked probable

cause to cite Plaintiff under any provision of Pennsylvania's disorderly conduct statute.  (Doc. No. 34 at 5-6.)

Probable cause exists when the "facts and circumstances within the officer's knowledge … are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Johnson v. Campbell, 332 F.3d 199, 211 (3d Cir. 2013) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)).   The probable cause inquiry is an objective one, based on the facts available to the officer at the time he issued the citation.  See Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994)).  Further, probable cause is assessed by viewing the totality of the circumstances.  Wright v. City of Philadelphia, 409 F.3d 595, 603 (3d Cir. 2005). The existence of probable cause is often a question for the factfinder;  however, a district court can conclude "that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding."  Favata, 511 F. App'x at 158 (citing Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).  Defendant maintains that the relevant inquiry is not whether Defendant had probable cause to cite Plaintiff under § 5503(a)(3) relating to obscene language, but, rather, whether Defendant had probable cause to cite Plaintiff under any provision of Pennsylvania's disorderly conduct statute.  See Bell v. City of Harrisburg, 457 F. App'x 164, 166 (3d Cir. 2012) (stating that "[p]robable cause need only exist as to any offense that could be charged under the circumstances").  Plaintiff does not disagree with Defendant's characterization of the relevant legal inquiry, but argues instead that Defendant lacked probable cause to cite him under any provision of the statute.  (Doc. No. 34 at 5-6.)

As noted above, Defendant cited Plaintiff with violation of Section 5503(a)(3) of Pennsylvania's disorderly conduct statute. The statute, set forth at 42 Pa. C.S.A. § 5503, provides:

> Disorderly conduct
> (a) Offense defined. – A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance, or alarm, or recklessly created a risk thereof, he:
>   (1) Engages in fighting or threatening, or in violent or tumultuous behavior;
>   (2) Makes unreasonable noise;
>   (3) Uses obscene language, or makes an obscene gesture; or
>   (4) Creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

42 Pa. C.S.A. § 5503. The statute defines "public" as anything "affecting or likely to affect persons in a place to which the public or a substantial group has access." Id. "Under the statute, whether a defendant's words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance. The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult or disorder." Primrose, 2012 WL 2321384, at *4 (quoting Commonwealth v. Fedorek, 946 A.2d 93, 100 (Pa. 2008)).

Defendant maintains that regardless of whether he possessed probable cause to charge Plaintiff with violating Section 5503(a)(3) relating to the use of obscene language, the undisputed facts of record indicate that he had probable cause to cite Plaintiff under either Section 5503(a)(1) for engaging in "tumultuous behavior" or the risk thereof; Section 5503(a)(2) relating to unreasonable noise or the risk of unreasonable noise;[10] or Section 5503(a)(4) relating to creating a "hazardous or physically offensive condition" or the risk thereof. (Doc. No. 38 at

_____

[10] "Unreasonable noise" is noise that is "not fitting or proper in respect to the conventional standards of organized society or a legally constituted community." Commonwealth v. Mastrangelo, 414 A.2d 54, 58 (Pa. 1980) (quotation omitted). The relevant factors assessed in determining whether noise is "unreasonable" include its volume, duration, the time of day, and whether the noise was reported to the police. See McNeil v. City of Easton, 694 F. Supp. 2d 375, 391 (E.D. Pa. 2010) (citing Commonwealth v. Maerz, 879 A.2d 1267 (Pa. Super. 2005); Commonwealth v. Alpha Epsilon Pi, 540 A.2d 580 (Pa. Super. 1988)).

18-19 n.15.)  As noted above, in response, Plaintiff argues that Defendant lacked probable cause to cite him under any provision of the statute.  (Doc. No. 34 at 5-6.)

Upon review of the briefs of the parties and the evidence of record, and construing all facts in the light most favorable to Plaintiff, the non-moving party, the Court concludes that no reasonable factfinder could conclude that Defendant lacked probable cause to cite Plaintiff under Pennsylvania's disorderly conduct statute, given his alleged conduct at the church Easter egg hunt, irrespective of his use of the word "asshole."[11]  The undisputed facts of record reveal that Plaintiff engaged in a loud verbal confrontation with a woman regarding her children at a church children's event.  This confrontation, involving Plaintiff referring loudly to Mrs. Richards' children as "liars" and "little assholes" was reported by Mrs. Richards to Defendant, who found her credible.  (Doc. No. 29 ¶¶ 9, 10.)  The substance of the encounter was described in the Citation/Summons as "[t]he Defendant did use explicit language during a youth Easter egg hunt. The tone of his voice was loud and alarmed the children's parents."  (Doc. No. 29-2 at 7.) Defendant contacted several individuals in attendance at the church event, who generally confirmed Mrs. Richards' description of the confrontation.  (Doc. No. 29 ¶¶ 11-16.)[12]

Accordingly, the Court concludes that, construing all facts in the light most favorable to Plaintiff,

---

[11] In his opposition brief, Plaintiff does not argue that the church where the incident occurred was not a "public" place for purposes of the disorderly conduct statute and the relevant First Amendment analysis.  (Doc. No. 34 at 5-6.)

[12]  The Court notes that Plaintiff attempts to create an issue of fact on this issue through his own "Statement of Additional Facts" by referencing statements from certain individuals allegedly from a purported transcript of the hearing on Plaintiff's Citation/Summons. (See Doc. No. 34 at 6; Doc. No. 33 ¶¶ 36-46.)  However, as discussed above in footnote 1, the Court will disregard Plaintiff's "Statement of Additional Facts" in connection with its consideration of Defendant's motion for failure to comply with Local Rule 56.1 of this Court.  Moreover, even if the Court were to consider such statements (and assuming that they constitute potentially admissible evidence), the Court notes that such statements are on the whole consistent with Defendant's Declaration and his deposition testimony.

the non-moving party, and because probable cause need only exist as to any provision of the disorderly conduct statute, no reasonable factfinder could conclude that Defendant lacked probable cause to issue a citation to Plaintiff for disorderly conduct based on Plaintiff's alleged behavior at the church Easter egg hunt.  As the lack of probable cause is an element of Plaintiff's First Amendment retaliation claim pursuant to <u>Hartman</u>, Defendant is entitled to summary judgment on that claim.[13]

## IV.    CONCLUSION

For all of the reasons discussed above, the Court will grant Defendant's motion for summary judgment. (Doc. No. 28.)  An appropriate Order follows.

---

[13] In light of the Court's determination as to probable cause, the Court need not address Defendant's argument that he is entitled to summary judgment based on qualified immunity.